# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| KARLEISHA GAMBLE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHARTSWAP, LLC; CAROLINA RADIOLOGY ASSOCIATES, LLC, d/b/a CAROLINA RADIOLOGY ASSOCIATES; and ACS PRIMARY CARE PHYSICIANS SOUTHEAST, P.C.,<br><br>Defendants. | Case No. 4:23−cv−00093<br><br><br><br>**DEFENDANT CHARTSWAP, LLC'S NOTICE OF REMOVAL** |

Pursuant to 28 U.S.C. §§ 1446 and 1332(d)(2) (the Class Action Fairness Act or "**CAFA**"), Defendant ChartSwap, LLC ("**ChartSwap**"), gives notice of the removal of this action to the United States District Court for the District of South Carolina. The grounds for removal of this action are set forth below.

## I.     INTRODUCTION

This action was filed on or about November 15, 2022 at 1:42 PM, in the Court of Common Pleas for Horry County. It was served on ChartSwap on December 20, 2022. Thus, this Notice of Removal is filed within thirty (30) days of service as required by 28 U.S.C. § 1446(b). True and correct copies of the Summons, Complaint, proof of service, and other documents filed previously in the state court proceeding are attached as Exhibit 1.

The Complaint seeks to certify a class under Rule 23 of the South Carolina Rules of Civil Procedure, consisting of:

> [a]ll citizens of South Carolina who, at any time from November 15, 2019 through present, paid, were obligated to reimburse payment

> for, or are currently obligated to reimburse payment for, or are obligated to reimburse payment for a charge from one or more Defendants in violation of the Patient Records Act for copies of patient records that were requested from a South Carolina healthcare provider by the patient's attorney, and for which payment has not been reimbursed.

(Compl. ¶ 49.) Thus, this case is a "class action" as defined in 28 U.S.C. § 1332(d)(1)(B).

Plaintiff alleges Defendants are responsible for charging allegedly unlawful fees in fulfilling request for copies of medical records and bills and seeks a variety of relief, including compensatory damages, prejudgment interest, punitive damages, reasonable costs and expenses, including reasonable attorneys' fees, an injunction prohibiting Defendants from further purported violation of the South Carolina Physicians' Patient Records Act, S.C. Code § 44-115-10, *et seq.* ("**Patient Records Act**"), and a declaratory judgment finding Defendants' conduct violates the Patient Records Act.

Removal of this action to the United States District Court is proper pursuant to 28 U.S.C. § 1441(a) and (b), because there is minimal diversity of citizenship between Plaintiff and at least one defendant, and the amount in controversy exceeds five million dollars. The United States District Court would, therefore, have original jurisdiction of this matter pursuant to 28 U.S.C. § 1332(d) had the action been originally initiated there.

## II. AT LEAST ONE PLAINTIFF IS A CITIZEN OF A DIFFERENT STATE THAN AT LEAST ONE DEFENDANT

According to 28 U.S.C. § 1332(d)(2)(A), district courts shall have original jurisdiction of any class action in which "any member of a class of plaintiffs is a citizen of a State different from any defendant." The Complaint sets forth that Plaintiff is a citizen of the State of South Carolina. (Compl. ¶ 8.) The Complaint likewise establishes that Defendant ACS Primary Care Physicians Southeast, P.C. ("ACS"), is a Georgia corporation. (Compl. ¶ 11.) ACS's principal place of business is Knoxville, Tennessee, as established by the Georgia Secretary of State's website, a

screenshot of which is attached hereto as Exhibit 2. Under 28 U.S.C. § 1332(c)(1), ACS is a citizen of its state of incorporation, i.e. Georgia, and of its principal place of business, i.e. Tennessee. Furthermore, Defendant ChartSwap, LLC is a limited liability company organized and existing pursuant to the laws of the State of Delaware, with all members thereof being citizens of states other than the State of South Carolina, as set forth in the Declaration of Newton Ross attached hereto as Exhibit 3. Therefore, at least two defendants are domiciled in state(s) that are different than where Plaintiff is domiciled, i.e. South Carolina. Based on the foregoing, the requirements under 28 U.S.C. § 1332(d)(2)(A) have been established.

### III.     THE AMOUNT IN CONTROVERSY EXCEEEDS FIVE MILLION DOLLARS

According to 28 U.S.C. § 1332(d)(2), district courts shall have original jurisdiction of any class action "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." The amount in controversy exceeds five million dollars, exclusive of interest and costs, in this case. In order "[t]o determine whether the jurisdictional minimum is satisfied, the [] court looks to the aggregated value of class members' claims." *Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 734 (4th Cir. 2009) (citing 28 U.S.C. § 1332(d)(6)); *see also Chavis v. Fid. Warranty Servs., Inc.*, 415 F. Supp.2d 620, 621 n.1 (D.S.C. 2006) (noting CAFA "confers federal diversity jurisdiction over class actions where the aggregate amount in controversy exceeds $5,000,000 . . . [and] abrogates the rule against aggregating claims"). "The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but 'an estimate of the amount that will be put at issue in the course of the litigation.'" *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 (4th Cir. 2017) (quoting *McPhail v. Deere & Co.*, 529 F. 3d 947, 956 (10th Cir. 2008)). Upon challenge to the amount in controversy, courts must retain jurisdiction unless "it is a legal certainty that plaintiff's claims do not reach the

required amount." *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995); *see also Wiggins v. N. Am. Equitable Life Assur. Co.*, 644 F.2d 1014, 1017 (4th Cir. 1981) (noting "the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim") (quoting *McDonald v. Patton*, 240 F.2d 424, 426 (4th Cir. 1957)).

Plaintiff claims all of the following charges are improper: (1) charging attorneys at a higher rate than allowed for printed copies of patient records, (Compl. ¶ 32(a)); (2) certification fees, electronic data archive fees, retrieval fees, and other fees not authorized by the Patient Records Act, (Compl. ¶ 32(b)); (3) charging more than actual costs for copies of x-rays and other types of imaging, (Compl. ¶ 32(c)); and (4) charges for search and handling for the production of medical records and separate charges for search and handling for subsequent production of medical bills, (Compl. ¶ 32(d)).

Plaintiff's allegations fail to identify, with specificity, what aspect of any particular class of charges is being challenged. However, based upon its best understanding of Plaintiff's claims, thousands of requests have been fulfilled that reflect at least some charges within at least one of the four categories of allegedly improper charges. (Exhibit 3, Declaration of Newton Ross.) Based on its data, ChartSwap has calculated the total value of allegedly improper charges to class members described above, including but not limited to over $1,370,000 from the "Instant Download Fee," over $77,000 from the "Retrieval Fee," over $41,000 from the "Certification Fee," over $8,000 from the "Expedited Processing Fee," over $326,000 from the "Per Page Fee," and over $2,969,000 from the "Search and Handling Fee." The total value exceeds $4,790,000.[1]

---

[1] It is difficult to ascertain if Plaintiff is contesting all or a portion of these various fees. Even if Plaintiff is only contesting a portion, Plaintiff has not pleaded sufficiently what percentage should be considered as improper. Given this difficulty, the total value should be considered in this analysis as the current best "'estimate of the amount that will be put at issue in the course of the litigation.'" *Scott*, 865 F.3d at 196 (quoting *McPhail*, 529 F. 3d at 956).

However, this calculation does not include the value of other damages, including punitive damages, which Plaintiff has requested. Alternative forms of damages such as punitive damages are properly considered in the analysis of the amount in controversy. *See Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 734–35 (4th Cir. 2009) (considering liquidated damages authorized by statute in the calculation of CAFA's amount in controversy requirement). While Plaintiff does not plead a specific award for punitive damages, as such is precluded pursuant to S.C. Code Ann. § 15-32-510(B), South Carolina allows punitive damages of up to five hundred thousand dollars pursuant to S.C. Code Ann. § 15-32-530.[2] The Fourth Circuit has recognized that "courts have upheld high punitive damages awards to deter misconduct undertaken for financial gain" and that "large ratios between punitive damages and compensatory damages are permissible when a defendant's willful [statutory] violation causes small amounts of compensable harm." *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 260 (4th Cir. 2017).

Further, this calculation also does not include the value of the injunctive relief Plaintiff seeks. In Plaintiff's Prayer for Relief, Plaintiff requests "an injunction prohibiting Defendants continuing to charge more than is allowed by South Carolina law for copies of patient medical records." (Compl., p. 15.) The Fourth Circuit is clear in that "like requests for money damages, requests for injunctive relief must be valued in determining whether the plaintiff has alleged a sufficient amount in controversy." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010). Courts must "ascertain the value of an injunction for amount in controversy purposes by reference

---

[2] Although ChartSwap disputes that any alleged conduct was "motivated primarily by unreasonable financial gain" and any other factor within S.C. Code Ann. § 15-32-530(B)(1), ChartSwap notes that if these factors are met, punitive damages can exceed the $500,000 cap and instead may rise to three times the amount of compensatory damages, pursuant to S.C. Code Ann. § 15-32-530. Therefore, the potential trebling of damages also clearly demonstrates the five-million-dollar threshold has been surpassed.

to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." *Id.* Here, Plaintiff seeks to enjoin ChartSwap from charging fees, or some portion of fees, that resulted in excess of $4,790,000 in revenue over the last three years. Accordingly, if granted, the requested injunction would cost at least that much over the next three years, even setting aside that ChartSwap's revenue has been increasing year-to-year over the last three years and this trend is expected to continue. Assuming ChartSwap would otherwise have been able to continue charging these rates for the next three years easily surpasses the amount in controversy threshold. Of course, this limitation of three years into the future discounts the possibility of a permanent injunction, which would naturally mean the amount-in-controversy is easily surpassed. Thus, Plaintiff's requested injunctive relief provides further support for this Court to conclude the amount-in-controversy threshold has been met. *Id.* at 640 (finding the amount-in-controversy threshold met due to the value of an injunction and holding that "all that matters is that we cannot say *with legal certainty* that [the requested] injunction is worth less than the requisite amount"). Based on the foregoing, the amount in controversy in this class action exceeds the five-million-dollar threshold.

## IV.     THE PUTATIVE CLASS IS IN EXCESS OF ONE HUNDRED MEMBERS

Pursuant to 28 U.S.C. § 1332(d)(5)(B), jurisdiction over a class action will not apply when "the number of members of all proposed plaintiff classes in the aggregate is less than 100." Here, Plaintiff seeks to represent a class of "[a]ll citizens of South Carolina" with whom Plaintiff is similarly situated. (Compl. ¶ 49.) Plaintiff fails to estimate the number of class members in the Complaint. However, the scope of the purported class almost certainly assures the class size will exceed one hundred members, as evidenced by the fact ChartSwap fulfilled over 163,000 requests made to its South Carolina facilities in which an "Instant Download Fee" was charged to a South

Carolina requester, between December 12, 2019, and December 11, 2022. (Exhibit 3, Declaration of Newton Ross.) Consequently, the class size required for CAFA jurisdiction is met.

## V.     NEITHER EXCEPTION TO CAFA JURISDICTION IS APPLICABLE

Lastly, two exceptions exist that require a district court to decline jurisdiction: (A) the "local controversy" exception, and (B) the "home-state controversy" exception. Neither exception applies.

Regarding the "local controversy" exception of Subparagraph (A) of 28 U.S.C. § 1332(d)(4), this Notice will only discuss Subsection (ii), because having met this element will demonstrate this exception is inapplicable.[3] The "local controversy" exception does not apply when, "during the 3-year period preceding the filing of [Plaintiff's] class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." *See* 28 U.S.C. § 1332(d)(4)(A)(ii). Here, during the three-year period preceding the filing of this class action, one or more class actions were filed asserting the same or similar factual allegations against ChartSwap on behalf of the same or other persons, including:

- *Ophelia Johnson, individually and on behalf of all others similarly situated v. ChartSwap, LLC et al.*, Case No. 2022CP1400504 (Clarendon County Circuit Court), filed November 15, 2022, at 1:32 PM.

A copy of the complaint in this action is attached as Exhibit 4 to this Notice. This evidence alone negates any argument to decline jurisdiction under Subparagraph (A) of 28 U.S.C. § 1332(d)(4).

---

[3] ChartSwap expressly reserves all rights to contest and dispute any other element found within 28 U.S.C. § 1332(d)(4)(A) that may be raised as a reason for remand.

The "home-state controversy" exception of Subparagraph (B) 28 U.S.C. §1332(d)(4) does not apply to this case either.[4] The statute is clear that all of "*the* primary defendants"—as opposed to *a* primary defendant—must be citizens of South Carolina in order to trigger the "home-state controversy" exception. *See* 28 U.S.C. § 1332(d)(4)(B); *see also Robinson v. Cheetah Transp.*, No. CIVA 06-0005, 2006 WL 3322580, at *3 (W.D. La. Nov. 14, 2006) (holding "the plain language of the statute indicates that remand is only required when all of the primary defendants are residents of the state in which the action was originally filed"), *appeal denied, judgment aff'd*, No. CIV.A. 06-0005, 2007 WL 28257 (W.D. La. Jan. 3, 2007); *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 515 (E.D. Pa. 2007) (same). Both ACS and ChartSwap are primary defendants in this case, because they are subject to "the overwhelming focus of the complaint[]" and they are the "holder[s] of the greatest potential liability to the greatest number of plaintiffs," making them both "primary defendant[s]." *Gentry v. Hyundai Motor Am., Inc.*, No. 3:13-CV-00030, 2017 WL 354251, at *11 (W.D. Va. Jan. 23, 2017), *aff'd in part, dismissed in part sub nom. Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278 (4th Cir. 2018). Even Plaintiff acknowledges as much by stating: "Plaintiff seeks significant relief from each Defendant and each of the Defendant's [sic] conduct forms a significant basis of the asserted claims." (Compl. ¶ 17.) Further, as previously discussed, ACS is not a citizen of the state of South Carolina, but rather of Georgia and Tennessee. Additionally, ChartSwap is a limited liability company organized and existing pursuant to the laws of the State of Delaware, with all members thereof being citizens of states other than the State of South Carolina. (Exhibit 3, Declaration of Newton Ross.) Neither of the primary defendants are citizens of South Carolina, which defeats the applicability of "home-

---

[4] Similarly, ChartSwap expressly reserves all rights to raise other arguments relative to 28 U.S.C. § 1332(d)(4)(B) that are not set forth herein as well.

state controversy" exception. Because neither exception applies to asserting jurisdiction under CAFA, this action has been properly removed.

## VI. CONCLUSION

As required by 28 U.S.C. § 1446(d), complete copies of all pleadings filed in state court will be filed along with this Notice of Removal, a copy of which will also be filed in the underlying circuit court in which the case was originally filed. Plaintiff has or will be served with a copy of this Notice under 28 U.S.C. § 1446(d). Based on the foregoing, ChartSwap has complied with all requirements under 28 U.S.C. §§ 1446 and 1332(d)(2), and both this Notice and the removal of this class action is proper.

Respectfully submitted,

s/Cheryl D. Shoun

| Cheryl D. Shoun | Fed ID No. 4761 |
| Rhett D. Ricard | Fed ID No. 13549 |

NEXSEN PRUET, LLC
205 King Street, Suite 400 (29401)
P.O. Box 486
Charleston, SC 29402
PHONE: 843.577.9440
FACSIMILE: 843.720.1777
cshoun@nexsenpruet.com
rricard@nexsenpruet.com

Attorneys for Defendant ChartSwap, LLC

January 9, 2023
Charleston, South Carolina